**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VAIKAI HOSPITALITY, INC., | : | NO. 1:23-CV-02132 |
| Plaintiff, | : | |
| | : | |
| v. | : | (CAMONI, M.J.) |
| | : | |
| UTICA MUTUAL INSURANCE | : | |
| COMPANY, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Before the Court is a motion for summary judgment brought by Defendant, Utica Mutual Insurance Company. Plaintiff, Vaikai Hospitality brought claims arising from Defendant's determination of coverage for fire damage to Plaintiff's property. After careful consideration of the parties' submissions, the Court will grant Defendant's motion for summary judgment on all claims because Plaintiff has not provided evidence sufficient to establish essential elements of its claims that Defendant breached a contractual duty or that Defendant denied Plaintiff's insurance claim on an unreasonable basis.

1

## II.    LEGAL STANDARD

### A.    Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states. Further, Defendant properly removed the proceeding to this Court from a Pennsylvania court pursuant to 28 U.S.C. § 1441.

### B.    Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it can "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006), citing *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation modified).

In considering a motion for summary judgment, a district court may not make credibility determinations or weigh the evidence. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004), citing *Anderson*, 477 U.S. at 255. Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are "the province of the factfinder." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role, at the summary judgment stage, is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### C.   Local Rule 56.1

The Middle District of Pennsylvania Local Rule of Court requires that a motion for summary judgment:

> be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.  The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.  Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements.

L.R. 56.1. Defendant filed a properly supported statement of material facts. *See* Defendant's Statement of Undisputed Material Facts, Doc. 34-2. Plaintiff likewise filed a properly supported and responsive statement, admitting most of the facts Defendant alleged. Doc. 36. Therefore, the Court deems Defendant's material facts admitted, except where properly countered by Plaintiff or contradicted by the record. *See* L.R. 56.1.

## III.    BACKGROUND

### A.    Procedural History

On November 27, 2023, Plaintiff, Vaikai Hospitality, Inc., doing business as "Econolodge Harrisburg, PA," commenced this action against Defendant, Utica Mutual Insurance Company, in the Court of Common Pleas of Dauphin County, Pennsylvania. Complaint, Doc. 1-2. Plaintiff alleged claims of breach of contract and statutory bad faith. *Id.* at 5-7. On December 22, 2023, Defendant removed the case to the Middle District of Pennsylvania's District Court. Notice of Removal, Doc. 1 at 1. After the close of fact discovery, Defendant moved for summary judgment on both claims. Doc. 34.

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Consent Form, Doc. 7. This case is fully briefed (Docs. 36, 40, 44) and ripe for resolution.

### B.    Undisputed Material Facts

The facts essential to this determination are not in dispute. In July 2019, a hotel owned and operated by Plaintiff suffered damage due to a

fire. Docs. 34-2 ¶ 1; 39 ¶ 1. At the time of the loss, the property was covered under an insurance policy issued by the Defendant: Utica Commercial Package Policy No. 5001270 (the "Policy"). Docs. 34-2 ¶ 3; 39 ¶ 3. Following the fire, Plaintiff submitted an insurance claim to Defendant, requesting payment for the loss in the amount of $770,971.91. Docs. 34-2 ¶ 4; 39 ¶ 4. Defendant paid Plaintiff $575,543.88, withholding an additional $213,751.35 as a depreciation holdback. Docs. 34-2 ¶ 5; 39 ¶ 5. Plaintiff claims that Defendant improperly refused to fully compensate it for its loss under the Policy and allegedly dealt with it in bad faith. Docs. 34-2 ¶¶ 6-7; 39 ¶¶ 6-7.

As proof of loss, Plaintiff submitted an invoice from C&Z Construction, totaling $770,971.91. *See* Docs. 34-2 ¶¶ 11-12; 39 ¶¶ 11-12. This invoice did not provide line-item entries or reference receipts, cancelled checks, bills, or other expenses incurred for the asserted depreciation holdback amount. Docs. 34-2 ¶ 13; 39 ¶ 13. It is undisputed that Plaintiff has not made any payments to C&Z Construction for covered repairs beyond the $575,543.88 that Defendant had paid to Plaintiff. Docs. 34-2 ¶ 28; 39 ¶ 28. The parties agree that Plaintiff's hotel has returned to full operation since the fire. Docs. 34-2 ¶ 42; 39 ¶ 42. The

6

sum of the receipts and cancelled checks that Plaintiff has submitted for the work it completed does not exceed the $575,543.88 in actual cash value (ACV) that Defendant has paid Plaintiff.  Docs. 34-2 ¶¶ 28, 51; 39 ¶¶ 28, 51. Additionally, Defendant has not issued Plaintiff any payment for the depreciation holdback amount. Docs. 34-2 ¶ 52; 39 ¶ 52.

Thus, the parties agree that, while Plaintiff sought payment of over $770,000 for losses caused by fire, Defendant paid out only $575,543.88, which equals the total Plaintiff has actually paid to its contractor for repairs performed. *See* Docs. 34-2 ¶¶ 4, 28; 39 ¶¶ 4, 28. There is no dispute that Plaintiff has not made payment to C&Z Construction for the remainder of its claimed losses. Docs. 34-2 ¶ 52; 39 ¶ 52.

## IV.  DISCUSSION

To succeed on a breach of contract claim in Pennsylvania, the Plaintiff must demonstrate (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Harley v. HealthSpark Found.*, 265 A.3d 674, 685 (Pa. Super. Ct. 2021). To succeed on a bad faith claim, the Plaintiff must demonstrate that (1) the insurer did not have a reasonable basis for denying the claim for benefits under the policy, and (2) the insurer knew of or recklessly disregarded its lack

of reasonable basis in denying the claim. *Watchword Worldwide v. Erie Ins. Exch.*, 308 A.3d 294, 303 (Pa. Super. Ct. 2024). Here, Plaintiff has not provided sufficient evidence to demonstrate that Defendant either breached a contractual duty or denied its insurance claim on an unreasonable basis. Therefore, the Court will grant Defendant summary judgment on both claims.

### A.   Plaintiff did not satisfy a necessary condition to receive the replacement cost value.

Defendant is entitled to summary judgment because Plaintiff did not produce sufficient evidence to show that it satisfied the contractual conditions to obtain the replacement cost value of its loss. The Policy provides that:

> [Utica] will determine the value of the Covered Property in the event of loss or damage . . . [a]t actual cash value as of the time of loss or damage, except as provided in **b., c., d**. and **e.** below. . . [Vaikai] may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage. . . We will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

Insurance Policy, Doc. 34-15 at 13, 15-16. Additionally, the Policy explains that "Actual cash value is calculated as the amount it would cost to repair or replace Covered Property. . . subject to a deduction for deterioration, depreciation and obsolescence. . . . The actual cash value of the lost or damaged property may be significantly less than its replacement cost." Doc. 34-15 at 17.

In other words, under the Policy, Utica agrees to determine the actual cash value of the property, which excludes, by definition, a depreciation holdback sum. Defendant will either pay Plaintiff the actual cash value, or, in the event Plaintiff elects to provide evidence of timely repair or replacement of damaged property, Defendant will make additional payment to cover the replacement cost.[1] Therefore, to qualify for payment on a replacement cost basis, Plaintiff needed to have (1) actually repaired or replaced the damaged property and (2) have done so as soon as reasonably possible after the loss.

The parties agree that Defendant did, in fact, pay the "actual cash value" of Plaintiff's loss, amounting to $575,543.88. *See* Docs. 34-2 ¶ 28;

---

[1] In the Policy, the full replacement cost doesn't include a reduction for depreciation. Doc. 34-15. at 15.

39 ¶ 28. Plaintiff claims that the Policy requires Utica to pay over the remainder of the full replacement cost, an additional sum in excess of $213,000. Doc. 39 ¶ 5.

Defendant counters that Plaintiff has not provided any evidence to demonstrate that it actually repaired or replaced the lost or damaged property to justify a replacement cost payment under the Policy. Doc. 34-3 at 6. Plaintiff responds that the Policy does not expressly mandate such proof, but merely requires that Plaintiff make the repairs in a timely manner. Doc. 40 at 7-8. Thus, according to Plaintiff, because it purports to have made all repairs, it is entitled to the replacement cost payment despite providing no evidence it has done so. *Id.* Under Plaintiff's interpretation of the Policy, Defendant is required to simply take Plaintiff's word, which reflects an absurd notion of contract law. Fortunately, the Court need not untangle that particular knot.

Even if the Policy did not require Vaikai to submit evidence of the completed work to qualify for the replacement value, this Court does. To withstand summary judgment, Plaintiff must produce evidence sufficient to convince a reasonable jury that it completed the work and satisfied its duties under the contractual provision it seeks to enforce. Fed. R. Civ. P.

56(e); *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *Williams v. Borough of W. Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir. 1989) (citation modified), citing *Anderson*, 477 U.S. at 256–57 ("[T]he plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment. Such affirmative evidence must amount to more than a scintilla, but may amount to less than a preponderance."). In Plaintiff's Brief in Opposition, it merely alleges, without evidence,[2] that it completed the work that it now demands Defendant pay for. Doc.

---

[2] Contrary to Plaintiff's averment that Defendant's building consultant "issued a written report stating that it could verify the amount of loss at $715,076.16" (Doc. 40 at 8), Defendant's expert, J.S. Held, in fact reached a meaningfully different conclusion. In 2019, J.S. Held estimated that it would cost $715,076.16 to repair the loss to Plaintiff's property. Doc. 34-14 at 4. However, after Plaintiff alleged to have fully repaired its property, Held could not verify that the full scope of the work was indeed completed, based on the documents that Plaintiff submitted. *Id.* at 5. Held's report states that, "Given the absence of further/full documentation and the adjustments referenced in email communications, completion of the recommended scope of work valued at $715,076.16 qualifying for release of withheld depreciation cannot be verified at this time." *Id.* Therefore, J.S. Held's report does not support Plaintiff's allegation that it completed repairs, but does support the Court's conclusion that Plaintiff has failed to meet its evidentiary burden.

40 at 1, 8. "Mere allegation" falls short of the mark. *Anderson*, 477 U.S. at 256. Therefore, summary judgment is warranted.

> **B.    Even if Plaintiff did qualify to receive replacement cost, it is not entitled to payment beyond what Defendant has already tendered.**

Even if Plaintiff had satisfied the pre-requisites to receive the replacement cost, the Policy limits replacement cost payment to no more than the amount Plaintiff actually spent. Within the "Replacement Cost" section of the Policy, the contract specifies that "[Utica] will not pay more for loss or damage on a replacement cost basis than. . . "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property." Doc. 34-15 at 16.

Here, the phrase "actually spent" unambiguously requires that Plaintiff in fact paid out the sum it seeks to recover on a replacement cost basis. In Pennsylvania, interpreting insurance contracts is a matter of law, and "[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense." *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 108 (Pa. 1999); *Kane v. State Farm Fire & Cas. Co.*, 841 A.2d 1038, 1042 (Pa. Super. Ct. 2003). A court may "inform [its] understanding of these terms by considering their

dictionary definitions." *Madison Const. Co.,* 735 A.2d at 108. "[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* at 106. The words "actually spent" are mundane, frequently used, and not subject to more than one reasonable interpretation in this context, thus, they are clear and not ambiguous. *Id.*

The Court, therefore, interprets the words "actually spent" in their colloquial senses. "Actually" means in act or in fact; really. *Actually*, MERRIAM-WEBSTER DICTIONARY (Mar. 13, 2026), https://www.merriam-webster.com/dictionary/actually. To "spend," means to use up or pay out. *Spend*, MERRIAM-WEBSTER DICTIONARY (Mar. 13, 2026), https://www.merriam-webster.com/dictionary/spend. Thus, the phrase "actually spent," as used in the Policy, limits the payout on a replacement cost basis to funds that the insured party has, in fact, paid out. Plaintiff asks the Court to find the term "actually spent" ambiguous, *See* Doc. 40 at 7, but that would stretch the words beyond their plain meaning to create an ambiguity where none exists. *Meyer v. CUNA Mut. Ins. Soc.,* 648 F.3d 154, 164 (3d Cir. 2011) ("Courts should not distort the meaning of the language or strain to find an ambiguity.").

Here, the Policy requires Defendant to pay Plaintiff the $575,543.88 that Plaintiff in fact paid to C&Z Construction. Both parties agree that Plaintiff has only paid C&Z Construction $575,543.88. Docs. 34-2 ¶ 28; 39 ¶ 28. They likewise agree that Defendant paid Plaintiff $575,543.88 as an ACV payment. *See* Docs. 34-2 ¶ 28; 39 ¶ 51. Therefore, even if the loss Defendant were to pay out was calculated on a replacement cost instead of actual cash value basis, as the Policy defines it, Defendant would not owe Plaintiff anything more.

Because Plaintiff has not fulfilled its burden of showing that Defendant breached the insurance Policy by improperly withholding payment for a covered expense under the contract, the Court will grant Defendant summary judgment.

## C.    Plaintiff has failed to provide sufficient evidence to support a claim of bad faith.

The Court will also grant summary judgment on Plaintiff's bad faith claim because Plaintiff did not identify sufficient evidence for a reasonable jury to find that Defendant acted in bad faith when it declined to issue Plaintiff further payment. A bad faith claim requires Plaintiff to prove two elements: 1) that the insurer did not have a reasonable basis for denying the claim for benefits under the policy and (2) that the insurer

14

knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Watchword Worldwide*, 308 A.3d at 303. Here, as explained above, Defendant's interpretation of the Policy and its decision to deny Plaintiff's claim for payment on a replacement cost basis were reasonable. Because Plaintiff has failed to demonstrate that Defendant denied its insurance claim on an unreasonable basis, the Court will also grant summary judgment on Plaintiff's bad faith claim.[3]

Accordingly, Defendant's motion for summary judgment will be granted, and judgment will be entered in favor of the Defendant.

An appropriate order follows.

Date: March 18, 2026                    s/*Sean A. Camoni*
                                        Sean A. Camoni
                                        United States Magistrate Judge

---

[3] Plaintiff's bad faith claim also warrants dismissal because it is dependent on, and thus inextricably tied to, its unavailing breach of contract claim. *Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.,* No. 7-1756, 2010 WL 1052911, at *1 n.2 (M.D. Pa. Mar. 22, 2010) ("Although the two claims are independent, plaintiff has raised a bad faith claim which is inextricably tied to its contract claim . . . If defendant were to prevail on the contract claim—in other words, if its denial of coverage was proper—then plaintiff's bad faith claim would be doomed.").

15